IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DELORIS BROWN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:12CV1204 |
| | ) | |
| PENN NATIONAL SECURITY | ) | |
| INSURANCE COMPANY d/b/a | ) | |
| PENN NATIONAL INSURANCE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (Docket Entry 19). Plaintiffs oppose the motion. (Docket Entry 24.) For the following reasons, it will be recommended that the Court grant in part and deny in part Defendant's Motion for Summary Judgment.

## I. BACKGROUND

Plaintiffs Deloris Brown, Jeremy Brown and Tiffany Wilmouth (collectively "Plaintiffs") filed this declaratory judgment action against Defendant Penn National Security Insurance Company ("Penn National") on September 27, 2012 seeking a declaratory judgment with respect to coverage afforded under a business auto insurance policy issued by Penn National to KTS Cable Installations, Inc. ("KTS") for injuries sustained by Plaintiffs in an automobile accident involving a vehicle owned by KTS. (Compl., Docket Entry 5.) Angella Ferguson, the wife of KTS Cable employee Brian Ferguson, was driving the vehicle when she collided with Plaintiffs' vehicle. In its motion for summary judgment, Penn

National argues that its policy does not extend coverage to Mrs. Ferguson for Plaintiffs' claims arising from the accident, nor should it be held liable under the North Carolina Financial Responsibility Act ("NCFRA"). Plaintiffs oppose Defendant's motion, asserting that there is a genuine issue of material fact as to whether the Penn National policy should cover Plaintiffs' injuries.

## II. STATEMENT OF FACTS

Penn National issued a business auto policy, policy number AX9 0664716, to KTS, with effective dates from July 1, 2011 through July 1, 2012, and a liability limit of $1,000,000 per accident (the "Penn National Policy" or "Policy.") (Policy at 6, Docket Entry 9-1.) Under the Business Auto Coverage Form section, the Policy indicates that "the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance." *(Id.* at 22.) The Liability Coverage section discusses the type of coverage and who is insured under the policy:

> A. Coverage
>
> > We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'.
> > . . .
> >
> > 1. Who Is An Insured
> >    The following are 'insureds":
> >
> >    > a. You for any covered 'auto';
> >    > b. Anyone else while using with your permission a covered 'auto' you own, hire, or borrow . . . .

*(Id.* at 23.)

The "Named Insured" on the Policy is KTS. The company engages in residential cable line installation, which requires some of its employees to travel to various sites throughout the workday. (Davis Aff. ¶¶ 3-4, Docket Entry 20.) As part of its business, KTS permits some employees to drive company-owned vehicles for work-related travel and KTS required such employees to sign a KTS Vehicle Agreement ("Agreement"). (*Id.* ¶¶ 4-6.) The beginning of the Agreement reads: "Agreement between KTS Cable Installations, Inc. hereinafter referred to as the company, and the employee named below for the assignment of a Company-owned car for business use with certain personal use privileges." (Agreement, Docket Entry 23-3 at 2.) Paragraph 7 states, "Personal use of the Company vehicle is not permitted under any circumstances." (*Id.*) Paragraph 8 states, "The custodian will be responsible for safe, over-night parking of the vehicle in a home garage, private driveway, or other safe legal areas off public highways." (*Id.*) KTS conducts a background check on employees prior to permitting an employee to drive a company-owned vehicle. (Weathers Aff. ¶ 9, Docket Entry 22.) KTS regularly updates Penn National regarding drivers who will be operating its vehicles. (Penn National's Resp. to Pls.' First Req. for Production of Docs ¶ 9, Docket Entry 23-1 at 10.)

Brian Ferguson was first employed with KTS Cable as a cable installer in November 2010. (B. Ferguson Dep. at 48, Docket Entry 25-5.) After training, he signed the Agreement with KTS Cable on December 4, 2010 and was assigned a KTS van for work. (*Id.* at 29-30.) Mr. Ferguson is married to Angella Dixon Hayes Ferguson. Mr. Ferguson testified that Mrs. Ferguson occasionally drove the KTS van to go to the store or pick their kids up after the engine blew up in their vehicle. (*Id.* at 33-34.) Mrs. Ferguson drove the van three to four

3

times a week. (A. Ferguson Dep. at 30, Docket Entry 25-3.) Mrs. Ferguson knew that the van belonged to KTS. (*Id.* at 27.) KTS never gave Mrs. Ferguson permission to drive the van. (B. Ferguson Dep. at 37.) Mrs. Ferguson did believe, however, that KTS permitted personal use of its company-owned vehicles. (A. Ferguson Dep. at 27.) Mr. Ferguson also believed personal use of the KTS vans was permitted based upon past history with other cable companies and what he knew about other KTS employees he observed with people in their company-owned vehicles. (B. Ferguson Dep. at 38-39.)

On June 3, 2012, Plaintiffs were involved in an automobile accident with Mrs. Ferguson. She was driving to pick up her daughter in the KTS Van assigned to Mr. Ferguson, with his permission, as she had done on numerous other occasions. (A. Ferguson Aff. ¶ 3, Docket Entry 25-2; B. Ferguson Aff. ¶ 10, Docket Entry 25-4.) Mrs. Ferguson was unaware that she was not supposed to drive the KTS Van. (A. Ferguson Aff. ¶ 4.) Mr. Ferguson never discussed the Agreement with Mrs. Ferguson and never told her that she was not allowed to drive the vehicle. (*Id.*; A. Ferguson Dep. at 27; B. Ferguson Aff. ¶ 10.) Mrs. Ferguson stated she was not aware that her driver's license was suspended[1] because she did not receive the notification from the Department of Motor Vehicles. (A. Ferguson Aff. ¶ 5; A. Ferguson Dep. at 44-47.) Mr. Ferguson was not aware at the time of the accident that Mrs. Ferguson's driver's license had been suspended. (B. Ferguson Aff. ¶ 11; B. Ferguson Dep. at 61; A. Ferguson Dep. at 51.)

---

[1] In her deposition, Mrs. Ferguson testified that she learned that her license was suspended after receiving a ticket for improper equipment in October 2010. (A. Ferguson Dep. at 45-46.) Mrs. Ferguson testified that she thought issues with her license were resolved after she paid the ticket issued in Oklahoma. (*Id.*)

4

## III. **DISCUSSION**

### A. Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 323 (1986)). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson*, 477 U.S. at 250; *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

5

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). "Permissible inferences must still be within the range of reasonable probability, however, and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." *Ford Motor Co. v. McDavid*, 259 F.2d 261, 266 (4th Cir. 1958). Moreover, the non-movant's proof must meet the substantive evidentiary standard of proof that would apply at a trial on the merits. *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993), *modified on other grounds, Stokes v. Westinghouse Savannah River Co.*, 420, 429-30 (4th Cir. 2000); *DeLeon v. St. Joseph Hosp., Inc.*, 871 F.2d 1229, 1233 n.7 (4th Cir. 1989). Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996).

In this case, the interpretation of the Policy is critical to the determination of liability on the part of Penn National. "[A]s with all contracts, the goal of construction is to arrive at the intent of the parties when the policy was issued." *Woods v. Insurance Co.*, 295 N.C. 500, 505, 246, S.E.2d 773, 777 (1978). Thus, "where a policy defines a term, that definition is to be used." *C.D. Spangler Const. Co. v. Indus. Crankshaft & Eng'g Co., Inc.*, 326 N.C. 133, 142, 388 S.E.2d 557, 563 (1990) (quotations omitted). "[N]ontechnical words, not defined in the policy, are to be given the same meaning they usually receive in ordinary speech, unless the context requires otherwise." *Grant v. Insurance Co.*, 295 N.C. 39, 42, 243 S.E.2d 894, 897 (1978). As noted by North Carolina courts:

> In determining coverage issues, "[t]he interpretation of language used in an insurance policy is a question of law, governed by well-established rules of construction . . . . [T]he policy is subject to judicial construction only where the language used in the policy is ambiguous and reasonably susceptible to more than one interpretation. In such cases, the policy must be construed in favor of coverage and against the insurer; however, if the language of the policy is clear and unambiguous, the court must enforce the contract of insurance as it is written."

*Erie Ins. Exch.*, 153 N.C. App. at 711-12, 570 S.E.2d at 765 (alterations in original) (quoting *Allstate Ins. Co. v. Chatterton*, 135 N.C. App. 92, 94-95, 518 S.E.2d 814, 816 (1999). Moreover, the Fourth Circuit previously stated:

> A court faces a conceptually difficult task in deciding whether to grant summary judgment on a matter of contract interpretation. Only an unambiguous writing justifies summary judgment without resort to extrinsic evidence, and no writing is unambiguous if susceptible to two reasonable interpretations. The first step for a court asked to grant summary judgment based on a contract's interpretation is, therefore, to determine whether, as a matter of law, the contract is ambiguous or unambiguous on its face. *If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue.* Even where a court, however, determines as a matter of law that the contract is ambiguous, it may yet examine evidence extrinsic to the contract that is included in the summary judgment materials, and, if the evidence is, as a matter of law, dispositive of the interpretative issue, grant summary judgment on that basis. If, however, resort to extrinsic evidence in the summary judgment materials leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must of course be refused and interpretation left to the trier of fact.

*Washington Metro. Area Transit Auth. v. Potomac Inv. Properties, Inc.*, 476 F.3d 231, 235 (4th Cir. 2007) (internal quotation omitted) (emphasis added).

North Carolina law places the burden on the party seeking coverage under an insurance policy to prove that coverage exists. *Penn Am. Ins. Co. v. Valade*, 28 F. App'x 253, 259 (4th Cir. 2002); *Fortune Ins. Co. v. Owens*, 351 N.C. 424, 430, 526 S.E.2d 463, 467 (2000). Thus, the burden here is on Plaintiffs to show that coverage under the Policy exists.

7

B. <u>Analysis</u>

Penn National first argues that terms of the Policy itself do not include Mrs. Ferguson as an insured individual. It is clear that KTS was insured, and there appears to be no dispute that Mr. Ferguson was given permission to drive KTS vehicles and was therefore "insured" under the Policy. (B. Ferguson Dep. at 50-51; Davis Aff. ¶ 8; Fitzgerald Aff. ¶¶ 10-11, 13, Docket Entry 21; Weathers Aff. ¶¶ 11, 13.) Plaintiffs argue that Mrs. Ferguson was also given express permission to drive the KTS van by virtue of the language in the Agreement between Mr. Ferguson and KTS which allowed personal use of the KTS van. Plaintiffs further argue that the Agreement itself is ambiguous on the issue of personal use and should be construed against KTS.

The undersigned believes that an ambiguity exists. The beginning of the Agreement indicates that there may be certain personal use privileges, while paragraph 7 states that "Personal use of the Company vehicle is not permitted under any circumstances." (*See* Agreement at 2.) The Agreement also indicates that employees were at minimum permitted to have the vehicles parked at their home. (*Id.* ¶ 8.) There is nothing in the Policy defining personal use privileges, which are susceptible to more than one meaning. However, this ambiguity is not pertinent to the dispositive issue relating to the Policy: whether Mrs. Ferguson was given express permission to drive the KTS van, and was therefore, insured by definition in the Policy. *See Bailey v. Gen. Ins. Co. of Am.*, 265 N.C. 675, 678, 144 S.E.2d 898, 900 (1965) ("Where express permission is relied upon it must be of an affirmative character, directly [and] distinctly stated, clear and outspoken, and not merely implied or left to inference."). Personal use privileges, if any, relate to Mr. Ferguson's use of the vehicle, not

8

Mrs. Ferguson's. Therefore, the undersigned finds that Mrs. Ferguson did not have express permission to drive the KTS van.

Defendant also argues that Mrs. Ferguson did not have implied permission to drive the KTS van. North Carolina case law has held that "one permittee does not have authority to select another permittee without specific authorization from the named insured." (*Id.*) In our case, it is clear that Mr. Ferguson is the "original permittee" with express permission from KTS to drive the KTS van. (B. Ferguson Dep. at 50-51; Davis Aff. ¶ 8; Fitzgerald Aff. ¶¶ 10-11, 13, Docket Entry 21; Weathers Aff. ¶¶ 11, 13.) It is also clear that KTS did not give authorization to Mr. Ferguson to select another permittee to drive the KTS van. (Davis Aff. ¶ 10.) Thus, Mr. Ferguson could not, on his own, designate Mrs. Ferguson as a second permittee without direct authorization from KTS. *Nationwide Mut. Ins. Co. v. Chantos*, 25 N.C. App. 482, 486, 214 S.E.2d 438, 442 (1975) ("[A] person, driving only with the permission of a permittee, is not considered as using the automobile with either the express or implied permission of the owner. . . .")

Plaintiffs further argue that Mrs. Ferguson had implied permission because employees routinely used KTS vans for personal use with KTS's knowledge. The North Carolina Court has previously stated that "implied permission involves an inference arising from a course of conduct or relationship between the parties, in which there is mutual acquiescence or lack of objection under circumstances signifying assent." *Bailey*, 265 N.C. at 678, 144 S.E.2d at 900 (internal quotation omitted). Mr. Ferguson submitted deposition testimony regarding both KTS's knowledge of other employees' personal use of the vans, and Mr. Ferguson's witnessing of a non-employee in the driver's seats of a KTS van. As

9

such, Plaintiffs argue that implied permission was given to Mrs. Ferguson because the culture of KTS fostered a belief that non-employee spouses could drive the van. Plaintiffs cite *Nationwide Mut. Ins. Co. v. Land* where the North Carolina Supreme court stated, "It may be found that the insured has given implied permission where the named insured has knowledge of a violation of instructions and fails to make a significant protest." 318 N.C. 551, 563, 350 S.E.2d 500, 506-07 (1986) (internal quotation omitted).

Plaintiffs' argument fails for two reasons. First, Mr. Ferguson admits that he never actually saw a non-employee physically move or drive a KTS van, and that portions of his testimony were purely speculative. (B. Ferguson Dep. at 40-41.) Secondly, even if such culture exists, such acquiescence by KTS is irrelevant to Mrs. Ferguson's personal use of the KTS van because KTS was unaware of such specific use. *See Ins. Co. of N. Am. v. Aetna Life & Cas. Co.*, 88 N.C. App. 236, 241, 362 S.E.2d 836, 839 (1987) ("There [was] no evidence that [employer] had ever seen [third-party driver] or that [employer] had any knowledge of [third-party driver's] operation of its car until after the collision giving rise to this litigation."); *Bailey*, 265 N.C. at 678, 144 S.E.2d at 900 (no implied permission where named insured lacked knowledge of driver's use of the vehicle); *Osmanzada v. Eldridge Concrete Const., Inc.*, Case No. 3:10-CV-1, 2011 WL 926235 at *3 (W.D. Va. Mar. 15, 2011) ("[A] showing that the owner never met the driver is generally fatal to an implied permission claim."). Since KTS was unaware of Mrs. Ferguson's use of the vehicle prior to and on the day of the incident, Plaintiffs' implied permission claim fails. Therefore, the undersigned concludes as a matter of law that there is no genuine issue of material fact as to whether Mrs. Ferguson had express or implied permission to drive the KTS van on the day of the incident.

*Coverage under the North Carolina Financial Responsibility Act*

Lastly, Defendant argues that coverage does not lie under the NCFRA because Mrs. Ferguson was not in lawful possession of the KTS van at the time of the incident. The NCFRA requires automobile insurers to provide coverage of a minimum coverage of $30,000.00 per person and $60,000.00 per accident if the individual driving the vehicle at the time of the accident was either in "lawful possession" of the vehicle, or driving with the express or implied permission of the named insured. *See* N.C. Gen. Stat. § 20-279.21(b)(2). "Under North Carolina law, limited coverage for drivers in 'lawful possession' of a vehicle must be 'written into every motor vehicle liability policy as a matter of law.'" *Osmanzada*, 2011 WL 926235 at *2 (quoting *North Carolina Farm Bureau Mut. Ins. Co. v. Simpson*, 198 N.C. App. 190, 192, 678 S.E.2d 753, 755 (2009)).

With regard to "lawful possession," the North Carolina court has held that "permission expressly granted by the original permittee is sufficient for purposes of the statute to place the second permittee in 'lawful possession'" under N.C. Gen. Stat. § 20-279.21(b)(2). *Chantos*, 25 N.C. App. at 487, 214 S.E.2d at 442. "[A] person is in lawful possession of a vehicle . . . if he is given possession of the automobile by the automobile's owner or owner's permittee under a good faith belief that giving possession of the vehicle to the third party would not be in violation of any law or contractual obligation." *N.C. Farm Bureau Ins. Co. v. Nationwide Mut. Ins. Co.*, 168 N.C. App. 585, 587, 608 S.E.2d 112, 113 (2005) (internal quotation omitted). The third party must also take possession in good faith belief

11

and "without notice of any restrictions on his use." *Nationwide Mut. Ins. Co. v. Baer*, 113 N.C. App. 517, 521, 439 S.E.2d 202, 205 (1994).[2]

Defendant argues that the present case is similar to the *Broughton* case. In *Iowa Nat. Mut. Ins. Co. v. Broughton*, Budget Rent A Car rented a vehicle to Carraway pursuant to written agreement and on condition that no one under the age of twenty-one would drive the car. 283 N.C. 309, 313, 196 S.E.2d 243, 246 (1973). Carraway permitted a nineteen year old to drive the vehicle and he was subsequently involved in an accident. *Id.* The court in *Broughton* held that "[t]he owner obligated itself to be responsible for Carraway's negligence but Carraway could not, in violation of his own agreement, make the owner responsible for [the nineteen year old's] negligence." *Id.* at 314, 196 S.E.2d at 247.

The undersigned finds that *Broughton* is distinguishable from the present case in that in *Broughton*, it was clear that the written rental agreement was unambiguous. Here, however, the ambiguous terms in the Agreement and Mr. Ferguson's knowledge of other employees' personal use of the KTS vans create a question of fact as to whether Mr. Ferguson believed he was in violation of any contractual obligation when he permitted Mrs. Ferguson to drive the van. Furthermore, Mr. Ferguson was not knowledgeable of Mrs. Ferguson's suspended license at the time of the incident. These facts create a genuine issue of material fact as to whether Mr. Ferguson had a good faith belief that Mrs. Ferguson was permitted to drive the KTS van. The court notes that KTS appears extremely cautious as it relates to employee

---

[2] In *Osmanzada*, the Western District of Virginia discussed the North Carolina rulings in *Baer* and *Belasco* regarding whether it is sufficient to show only the good faith belief of the third party driver, or whether it is necessary to also show the good faith belief of the original permittee. *Osmanzada*, 2011 WL 926235 at *5. The parties in the present case do not address this issue. Because the Court finds a genuine issue of material fact exists as to both Mr. and Mrs. Ferguson's good faith belief, it will not further address this issue.

drivers by having them sign a vehicle agreement, conducting motor vehicle background checks, and keeping Defendant abreast of the employees authorized to drive. However, Mr. Ferguson's belief regarding other employees' personal use of the KTS vans and the ambiguity in the Agreement bears upon the outcome of this case as it relates to "lawful possession." With regard to Mrs. Ferguson's good faith belief, based upon her deposition testimony and affidavit, sufficient evidence of a genuine issue of material fact exists as to whether she had a good faith belief that she took possession of the van without notice that it violated "any law or contractual obligation." *N.C. Farm Bureau Ins. Co.*, 168 N.C. App. at 587, 608 S.E.2d at 113. Moreover, Mrs. Ferguson did not need KTS' permission to drive the KTS van to be in "lawful possession." *Caison v. Nationwide Ins. Co.*, 36 N.C. App. 173, 178, 243 S.E.2d 429, 432 (1978). Because the Court finds a genuine issue exists as to Mr. and Mrs. Ferguson's good faith belief of Mrs. Ferguson's lawful possession, summary judgment should not be granted in favor of Defendant as to coverage under the NCFRA.

## IV. CONCLUSION

For the foregoing reasons, this Court finds that there is a genuine issue of material fact as to whether Defendant has a duty and obligation under the NCFRA to provide benefits and coverage for any injuries sustained by Plaintiffs on June 3, 2012. The Court finds that there is no genuine issue of material fact as to whether coverage exits pursuant to Policy terms because Mrs. Ferguson was not an "insured" as defined by the Policy. Accordingly, the Court **RECOMMENDS** that Defendant's motion for summary judgment (Docket Entry 19) be **GRANTED IN PART** as to coverage under the Policy, and **DENIED IN PART** as to claims under the NCFRA.

/s/ Joe L. Webster
Joe L. Webster
United States Magistrate Judge

January 28, 2014
Durham, North Carolina